[L. A. No. 21870.   In Bank.   July 3, 1951.]

JOSEPH CAPITAIN, Respondent, v. L. A. WRECKING
COMPANY et al., Appellants.

Bloom & Bloom and Eleanor V. Jackson for Appellants.

Barry Sullivan for Respondent.

CARTER, J.—The trial court found that on December 17, 1947, defendants, L. A. Wrecking Company, a partnership, and the partners, the owners of a house situated on a lot in Los Angeles, entered into an agreement to sell the house to plaintiff and move it to Bandini, California, for a total sum not exceeding $6,500 delivered. A $500 deposit or down payment was made and thereafter on April 2, 1948, a second deposit of $3,000 was made and accepted while the house was still at its original location. The balance of $3,000 was to be paid when the house was placed on the foundation at the new location. Defendants employed the M & M House Moving Company to move the building, which it did on May 3, 1948, and placed it on "sills and blocks," the property of the mover, at the new location. It was to be lowered to the foundation by the mover. For the purpose of moving, a "top portion" of the top of the building had to be removed. On May 10, 1948, seven days after the moving, the house was destroyed by fire. At that time the portion of the roof had not been replaced, defendants had placed tarpaulins on the house to protect it, tools and equipment for replacing the roof were in the house, materials for the job were present at the new location and the house had not been placed upon the foundation. The court concluded that at the time of the fire, defendants had possession and control of the building and plaintiff should recover $3,587.50—the amount deposited plus sales tax—from defendants and the latter take nothing on its cross-complaint.

Defendants contend that title to the house had passed to plaintiff when it was placed on the blocks and sills, and therefore the risk of loss was upon plaintiff at the time of the fire.

The applicable legal principles are conceded by the parties. With certain exceptions not here pertinent, the risk of loss falls upon the seller if title has not passed, and on the buyer, if it has. (Civ. Code, § 1742.) "(1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred. (2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties,

usages of trade and the circumstances of the case." (Civ. Code, § 1738.) "Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer. . . . Rule 5. If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property. does not pass until the goods have been delivered to the buyer or reached the place agreed upon." (Civ. Code, § 1739.) It remains therefore to ascertain whether the evidence was sufficient to support the conclusion that the risk of loss rested with defendants—sellers.

The contract was dated December 17, 1947, drawn under the letterhead of defendants, and recited that $500 had been paid by plaintiff to defendants as a deposit on the house at a specified location "which is to be moved to approximately S.E. Cor. of Couts and Panocha Streets, Bandini, California." "Full price of" house—$3,500—less $500 deposit to be paid by plaintiff when application to move has been approved by Los Angeles. The "sale (is) subject to approval of buyer to the additional cost of moving." The total price is not to exceed "$6,500.00 delivered." Defendants have the right to cancel the contract under specified contingencies by refunding all money received. On April 2, 1948, plaintiff had made arrangements for payments under the contract to be made by Atlantic Savings and Loan Association, with whom he had arranged for a loan. On that day in the presence of plaintiff and Chain, one of the defendants—partners—a notation was made in handwriting on the contract by Dinoto, a representative of Atlantic, that "4/2/48, I, John Capitain, [plaintiff] hereby authorize the Atlantic Savings and Loan Association, to pay to L. A. Wrecking Co. [defendants] balance due on the contract when building is [placed] on the foundation. Signed: John Capitain." The notation was made ensuing a conversation between plaintiff and Chain as to when the balance of $3,000 would be paid, and plaintiff had said he would pay when the house was on the foundation and, according to plaintiff's testimony, the wording of it was dictated by Chain. Another notation placed on the contract at the same time by Chain reads: "Received $3087.50 as a further deposit, balance due $3000." In other conversations defendants agreed to replace the portion of the roof and some bay windows which were removed in the process of moving;

that the house was to be placed on the ground at a point designated by plaintiff; that "after the foundation was made the defendants were to lower this house down onto the foundation, secure it to the foundation"; and that defendants told plaintiff the house was fully covered by insurance until delivered and all work finished. In the agreement between defendants and the mover, for moving the house, the mover agreed to lower it onto the foundation.

■ Defendants do not dispute, and it is clear from the contract, that it was one for the sale of property which was to be delivered to a certain place by the sellers—defendants— and thus rule 5 of section 1739 of the Civil Code, quoted *supra*, applies. The only question remaining is when the delivery to the place was consummated. It is true the contract in the first part mentions delivery to the lot alone. There are, however, other factors and circumstances which would justify an inference that the delivery would not be complete, and therefore, title would not pass, until the house was lowered onto the foundation and the roof restored. There is the first notation made thereon on April 2, 1948, at defendants' dictation, that the $3,000 balance is to be paid when the house is lowered onto the foundation, indicating that the delivery by the sellers was not to be completed until the building was on the foundation. The plaintiff was purchasing a whole house as a unit, not in parts, hence it may be said that the house was not delivered until the roof, which had been removed, had been restored, and thus a complete house delivered. The house was setting on blocks which belonged to the mover. It is true that it was plaintiff's obligation to build the foundation, and he had not done so when the fire occurred, but there was no time fixed for the construction of the foundation, and only seven days, not an unreasonable time, had elapsed since the house was placed on the blocks. There had been a long delay on defendants' part in moving the house. Defendants had lumber and equipment on the property to be used in replacing the roof, and some work had been done in that respect. Considering all of the circumstances it may be inferred that title did not pass before the fire.

■ Defendants refer to evidence that plaintiff, in arranging for a loan with Atlantic Savings and Loan Association, agreed with the latter to insure the house. That is not controlling, as the contract gave plaintiff an insurable interest, and he had a right to protect the lender regardless of where

title was. It is not conclusive that plaintiff understood or intended title to pass. Moreover, defendants repeatedly assured plaintiff that they were fully covered by insurance, with respect to the house, even while it was on the blocks.

The same comment is applicable to the assertion that the full price of the house—$3,500—was paid before it was moved. That might indicate that title was to pass then but it is not conclusive. There was still a balance of $3,000 which, while it might be allocated to the moving expense, was still a part of the $6,500 which was to be the maximum amount plaintiff agreed in the contract to pay.

Judgment affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellants' petition for a rehearing was denied August 2, 1951.